In re PARKER et al. (Supreme Court, Appellate Division, Fourth Department. October 17, 1902.) Edwin J. Baldwin, for appellants. Thomas Carmody, for respondent.

PER CURIAM. Decree of surrogate, appealed from, modified by reducing the amount of the recovery of Charles H. Parker against the estate, as of the date of entry thereof, from the sum of $694 to the sum of $508, and, as thus modified, affirmed, without costs.

SPRING, J., (dissenting). I cannot concur with a majority of the court in its conclusion upon this appeal. The testatrix was the mother of the respondent, and lived in his family for a few years before her death in 1896. In November, 1891, she executed her last will, in which she made a large number of specific bequests of trifling keepsakes, and out of her little property gave $200 to four grandchildren, among whom one of the appellants is included. The respondent was her residuary legatee; but, after the payment of the few debts she left unpaid and the expenses of her burial and the monument, there was but little more than sufficient to meet the bequests to the grandchildren. The wife of the respondent presented a claim for the board and care of the testatrix, which was resisted by the grandchildren. There was no proof on the trial showing that the claim, which was verified by the wife, belonged to her; and at the close of the evidence the surrogate permitted an amendment to be made, so that the claim was treated as belonging to the respondent, and was allowed to him in full. We think the proof was insufficient to authorize the allowance of the claim. It is clear that the claim must be supported by an agreement to pay for these services, or by proof that payment was intended to be made. Williams v. Hutchinson, 3 N. Y. 312, 53 Am. Dec. 301; Shirley v. Vail, 38 How. Prac. 406. The only evidence which tended to show an agreement or promise to pay for the board and care of the testatrix is that of the witness Spink, who for a time lived in the house occupied by the claimant and his mother. He testified that he did not know that the testatrix had any arrangement with the Parkers, and added: "The only thing I ever heard was that she stated Mrs. Parker should have her pay. She was talking about staying there, and at the time I wrote her will she said some of the rest of them had been helped. Of course, I couldn't go on and tell what she said." Later in his testimony he said that the testatrix told him "that Mary Parker was always very good to her, and that she always calculated to pay Mrs. Parker for her trouble." It will be observed that there is nothing in any of these alleged statements of the decedent admitting any obligation on her part to pay for the services rendered by her son or his wife. They do indicate an appreciation of the kindness of her daughter-in-law, and an intention to compensate her; but that is far from establishing a

contract of hiring or a legal obligation to pay. The presumption is that services of this character are performed by reason of love and affection, or an obligation resting upon relationship, and not with the expectation of payment. Claims, therefore, of this kind, presented after the death of the person whose estate is sought to be depleted thereby, are scrutinized with especial care, and allowed only when it appears that the services were rendered pursuant to a definite agreement that they were to be paid for, or that such was the clear understanding of the parties. Kearney v. McKeon, 85 N. Y. 136; Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583; In re Marcellus, 165 N. Y. 70, 58 N. E. 796. The court in discussing this question in Kearney v. McKeon, supra, uses this language at page 139: "Claims withheld during the life of an alleged debtor, and sought to be enforced when death has silenced his knowledge and explanation, are always to be carefully scrutinized, and admitted only upon very satisfactory proof." Nor do we think this claim should have been allowed until supported by the affidavit of the respondent to the effect "that the claim is justly due, that no payments have been made thereon, and that there are no offsets against the same to the knowledge of the claimant" (Code Civ. Proc. § 2718), as there was no proof of payment on the trial. To be sure, there is no specific requirement that the claim is to be accompanied by the affidavit of the executor in form like that in support of a claim presented to him. The reason, however, for the rule, exists even more in the case of an executor than in that of any other claimant; for there is no one especially charged with the duty of investigating the validity of his claim. The affidavit that no payments have been made and no offsets exist tends to prevent the presentation of a demand which has been discharged or reduced by the decedent. The necessity for the rule appears in this proceeding. The testatrix resided with her son for four or five years, and the claim is allowed upon the assumption that nothing was ever paid upon it, and without any affidavit that such was the fact; and no proof was presented to the surrogate that the claim was wholly unpaid and was not subject to offsets. The authorities treat a claim of this kind by an executor or administrator the same as any other claim, and hold that he must verify the validity of his claim. Terry v. Dayton, 31 Barb. 519; Williams v. Purdy, 6 Paige, 166; Clark v. Clark, 8 Paige, 152, 35 Am. Dec. 676. The executor must establish his claim by competent proof, and as an additional safeguard, and as an obstacle to the presentation of an unfounded charge, he should also be required to make the affidavit referred to, or present proof to the surrogate of the same purport. The contestant objected to the amendment of the claim, allowing it to be presented in favor of the executor, and among other reasons urged was that it did not appear that the alleged claim had not been fully paid. This sufficiently called attention to the omission; for, had there been any proof of this kind, there would have been no necessity for the affidavit. The decree of the surrogate's court should be reversed, and a new trial ordered, with costs to the appellants to abide the event against the respondent personally.

McLENNAN, J., concurs. ·